IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-01035-WJM-NRN

LEON D. BLACK,

    Petitioner,

v.

RICHARD EMERSON,

    Respondent.

___

**ORDER ON PETITIONER LEON BLACK'S UNOPPOSED MOTION TO RESTRICT (ECF No. 21) AND RESPONDENT RICHARD EMERSON'S RENEWED MOTION TO MOTION TO RESTRICT CASE (ECF No. 22)**

___

**N. REID NEUREITER**
**United States Magistrate Judge**

    This case involves a Petition to Compel Compliance with an Arbitral Subpoena ("Petition"), filed March 31, 2025. ECF No. 1. In connection with that filing, Petitioner Leon Black also filed a motion to seal (restrict from public access) the entire proceeding—including the petition itself. ECF. No. 2. That motion was referred to me by Judge William J. Martinez on April 1, 2025. ECF No. 7. The case has been restricted in its entirety pending a determination on the motion to seal/restrict.

    I held a Status Conference on May 22, 2025. *See* ECF No. 19 (Courtroom Minutes). At that Status Conference, I pointed out that with the restriction of the entire case, the public had not had an opportunity to oppose the restriction and that the motion was not therefore in compliance with D.COLO.L.CivR. 7.2, which governs public access to court documents and proceedings.

That rule reflects the general policy of this Court that "[u]nless restricted by statute, rule of civil procedure, or court order, the public shall have access to all documents filed with the court and all court proceedings." D.COLO.LCivR 7.2(a). The rule also specifically directs that "[a] motion to restrict public access shall be open to public inspection," and notice of such a motion is to be posted on the Court's website, allowing any person to file an objection to the motion to restrict. D.COLO.LCivR 7.2(c) & (d). Accordingly, I instructed the parties to re-file renewed motions to restrict, compliant with our local rule and which would be publicly listed and viewable to allow for objections:

> The Court directs the parties to re-file a Motion for Leave to Restrict in full compliance with District of Colorado Local Rule 7.2—including addressing the interest to be protected and why such interest outweighs the presumption of public access, and identify a clearly defined and serious injury that would result if access is not restricted, by close of business on May 30, 2025. The Motion should also explain why no alternative to restriction (such as redaction or restricted access to certain exhibits) is practicable or why only restriction of the entire case will adequately protect the interest in question.

ECF No. 19; *see also* ECF No. 20 (Minute Order Relating to Restriction of Case).

On May 30, 2025, Mr. Black filed a new motion to restrict, ECF No. 21, and Respondent Richard Emerson also filed a motion to restrict, ECF No. 22. The two motions differ in that Mr. Black basically seeks to again restrict the entire proceeding, including the Petition, Mr. Emerson's Memorandum of Law in Opposition to Petition to Compel Compliance with Arbitral Subpoena ("Response"), and all exhibits. Mr. Black asserts that each of the filings submitted to date in the matter "reveals confidential documents and information subject to a confidentiality order from Mr. Black's non-public arbitration." ECF No. 21 at 1.

Mr. Emerson, on the other hand, proposes more limited restrictions, asking only to restrict Exhibits A, C, E, F, G, H, and I to his Response (ECF Nos. 11-2, 11-4, 11-6, 11-7, 11-8, 11-9, 11-10); and Exhibits B and C to Respondent's Letter to Judge Neureiter, dated May 15, 2025 (ECF Nos. 16-2, 16-3). *See* ECF No. 22 at 11. Mr. Emerson emphasizes his own privacy interests and the fact that he is not a party to the arbitration. Mr. Emerson asks the Court to seal certain materials that are confidential submissions to the arbitration panel and that contain references to other non-parties to the arbitration or that include content that is not relevant to the issues before the Court in this Petition. Mr. Emerson seeks only targeted restriction and redactions and does not seek to seal the Petition, the underlying subpoena, or briefs and letters submitted in this action. ECF No. 22 at 3.

These two motions have been listed on the Court's website and are available for public inspection either in the Clerk's Office or electronically via the PACER system. As of now, the remainder of the case entries, including the Petition, remain restricted and unavailable for public inspection.

There have been no objections filed to either motion to restrict. However, the lack of an objection is not dispositive of whether a motion to restrict should be granted. *See* D.COLO.LCivR 7.2(d) ("The absence of objection alone shall not result in the granting of the motion.").

## I. BACKGROUND

According to the Petition, ECF No. 1, this matter concerns Mr. Emerson's alleged failure to comply with a subpoena for the production of documentary evidence that was duly signed and issued by a JAMS arbitration panel (the "Panel") pursuant to the

3

Federal Arbitration Act ("FAA"), 9 U.S.C. § 7. The Panel is presiding over an arbitration currently pending in New York County, New York, entitled *Leon Black v. Joshua Harris* (the "Arbitration"). The arbitration clause of the relevant agreement provides that discovery issues are to be "guided generally by . . . the United States Federal Rules of Civil Procedure," and specifically authorizes the Panel to issue third-party subpoenas.

According to the Petition, after considering voluminous written submissions and oral argument concerning the relevance of materials possessed by Mr. Emerson, the propriety of seeking material from nonparties, and balancing the need for the documents requested with the burden on Mr. Emerson, the Panel issued a subpoena to Mr. Emerson (the "Subpoena") pursuant to Rule 21 of the JAMS Comprehensive Arbitration Rules and Procedures and 9 U.S.C. § 7. After the Subpoena was issued, Mr. Emerson—who is represented by counsel for Joshua Harris, the defendant in the arbitration—filed a set of responses and objections in which he objected to all four of Mr. Black's document requests. Per the Petition, Mr. Emerson has refused to comply with the Subpoena and has made instead what Mr. Black calls "a de minimis production of a small number of documents," consisting of a total of 19 documents, which, in sum, reflect three email chains. ECF No. 1 at 4.

Mr. Black has therefore filed his Petition requesting that this federal court compel Mr. Emerson to comply with the subpoena in full and without withholding any responsive documents at the direction of Mr. Harris's counsel.

As noted, in connection with the Petition, Mr. Black also filed a motion to restrict or seal the entire case, which would mean everything about the matter, including the names of the parties, and its very existence on the docket, would be hidden from public

4

view. *See* ECF No. 2. In his renewed motion, Mr. Black effectively urges the same level of restriction, asking that his Petition, Mr. Emerson's Response and all attached exhibits, Mr. Black's Reply in Support of his Petition ("Reply"), and a May 15, 2025, letter from Mr. Emerson (the "Surreply") be sealed from public view. *See* ECF No. 21 at 1. This is the entire case.

As justification for the restriction, Mr. Black argues that the Arbitration is a dispute over a contract which is subject to a mandatory confidentiality provision. Discovery in the Arbitration is, as required by the contract, subject to a confidentiality order which restricts the use of confidential or proprietary documents or information produced by any party or nonparty, including Mr. Emerson. And, Mr. Black, as a party to the Arbitration, is subject to the jurisdiction of the Panel, which has further ordered Mr. Black to use reasonable efforts to file all confidential information under seal. ECF No. 21 at 2.

In support of his motion to restrict, Mr. Black acknowledges the common-law right of access to judicial records but argues that the right is "not absolute" and "can be rebutted if countervailing interests heavily outweigh the public interests in access." *Id.* (quoting *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007)). Mr. Black cites the FAA, which purportedly recognizes a strong policy of enforcing arbitral confidentiality provisions. ECF No. 21 at 3–4; *see also In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 81 (2d. Cir. 2023) (explaining that the plaintiffs' counsel should not be able to end-run a confidentiality provision in an arbitration agreement by filing protected materials with the court and then invoking the presumption of access to judicial documents, holding that district court properly sealed summary judgment documents which the court did not reach on the merits).

5

## II.  RULING ON MR. BLACK'S MOTION TO RESTRICT

"Although courts have discretion, sealing litigation documents, to say nothing of entire cases, is disfavored in the United States." *Miller v. Fluent Home, LLC*, No. 2:20-cv-00641, 2020 WL 5659051, at *1 (D. Utah Sept. 23, 2020) (refusing defendant's request to seal entire case to prevent reputational harm). Indeed, the Judicial Conference of the United States has emphasized that "sealing an entire case is a last resort," that should be done only when "required by statute or rule or justified by a showing of extraordinary circumstances and the absence of narrower feasible and effective alternatives (such as sealing discrete documents or redacting information)." Judicial Conference of the United States, *Judicial Conference Policy on Sealed Cases* (Sept. 13, 2011)

The reason that sealing an entire case is "disfavored" is because "[i]n the United States, there is both a constitutional (First Amendment) and a common law right of public access to judicial documents-defined as documents that are 'relevant to the performance of the judicial function and useful in the judicial process.'" *Veleron Holding, B.V. v. Stanley*, No. 12 CIV. 5966 CM, 2014 WL 1569610, at *6 (S.D.N.Y. Apr. 16, 2014) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995); and then citing *Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)); *see also United States v. Bacon*, 950 F.3d 1286, 1292 (10th Cir. 2020) ("'Courts have long recognized a common-law right of access to judicial records.'" (citations omitted)). Given the constitutional and common law foundation for open courts, court records are presumed open to the public. Indeed, sealing an entire case, as opposed to simply certain documents within a case, is especially disfavored because doing so "conceal[s] the very existence of lawsuits

6

from the public." *Standard Chartered Bank Int'l (Am.) Ltd. v. Calvo*, 757 F. Supp. 2d 258, 260 (S.D.N.Y. 2010).

The public has a fundamental interest in understanding the disputes presented to and decided by our courts, so as to assure that they are run fairly and that judges act honestly. *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980). Sealing an entire case prevents critical public monitoring of the judge and judicial process:

> The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice. Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke. Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*Amodeo*, 71 F.3d at 1048; *see also Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993) ("The public's exercise of its common law access right in civil cases promotes public confidence in the judicial system . . . . As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud.") (quoting *Rep. of the Phillippines. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir. 1991) (citation omitted)); *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 636 (D. Colo. 2010) (stating that "[t]he public has a fundamental interest in understanding the

7

disputes presented to and decided by the courts, so as to assure that they are run fairly and that judges act honestly" and denying motion to file summary judgment brief under seal).

An excellent explanation of the impropriety of filing secret complaints or actions is the *Standard Chartered Bank* case, cited above. Not unlike in the instant case, *Standard Chartered Bank* involved an underlying arbitration. There, the plaintiffs sought in federal court to enjoin the arbitration, asserting that an AAA arbitration panel had committed errors of law in a jurisdictional decision. But the parties had entered into a confidentiality agreement to keep all "Arbitration Material" private, so they sought permission to file under seal the injunction complaint, the attached exhibits, and all party filings in the case. *Standard Chartered Bank*, 757 F. Supp. 2d at 259.

The Southern District of New York was quite critical of the effort, stating, "This application presents the new paradigm in the commercial litigation arena where parties attempt to supplant federal court practice with private arbitral agreements. Efforts, like this one, to file significant corporate litigation under seal, interfere with sound judicial administration and the public's right to monitor activities in federal courts." *Id.* The court found the confidentiality provision and the effort to file the case under seal to have "all the characteristics of an artificial construct in which major financial institutions seek to invoke the jurisdiction of this Court using their own set of rules." *Id.* The court was unequivocal in its rejection of the attempt to keep secret the use of the public resources of the federal court:

> By attempting to prevent the public from learning anything about this action—including its existence—Plaintiffs endeavor to transfer the privileges of their private arbitration to a public judicial forum. But their application is not grounded in concerns for judicial efficiency or the privacy

8

> rights of innocent parties. Rather, Plaintiffs seek to shield from scrutiny issues of significant public concern. These matters should not be shrouded in secrecy.
>
> . . . .
>
> Applications like this one spawn considerable mischief. If granted, they conceal the very existence of lawsuits from the public. Moreover, they impose a substantial burden on the courts and the judges to whom sealed actions are assigned. This Court will not permit the parochial interest of one party to trump the public interest in the efficient and transparent administration of justice.

*Id.* at 260. This decision has been cited with favor in other instances where a party or parties sought to seal entire cases or pleadings. *See, e.g., In re Platinum and Palladium Commodities Litigation*, 828 F. Supp. 2d 602 (S.D.N.Y. 2011) (rejecting effort to file third amended complaint under seal, even with a heavily redacted version for public filing); *In re Tether and Bitfinex Crypto Asset Litig.*, 19 Civ. 9236 (KPF), 2024 WL 3520363, at *20–21 (S.D.N.Y. July 24, 2024) (declining to accept overbroad proposed redactions that would have the practical effect of sealing the entire case); *Paychex, Inc v. Salazar*, 21-CV-6540L, 2021 WL 4840856, at *1 (Oct. 18, 2021 W.D.N.Y.) (denying motion to seal documents submitted in support of request for attorneys fees); *Veloron Holding*, 2014 WL 1569610, at *6–7 (granting motion to unseal documents from confidential London arbitration and rejecting what the Court interpreted as a "well-documented effort by private business parties to get around liberal American discovery rules by finding ways to shroud, not just dispute resolution proceedings, but evidence about disputed matters, with secrecy").

The First Amendment and common-law rights of access to judicial documents are, of course, not absolute. The "presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." *Rushford v.*

9

*New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption. *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citing *Rushford*). *See also United States v. McVeigh*, 119 F.3d 806 (10th Cir. 1997) (conducting balancing test in mandamus action to conclude that unsealing of inadmissible evidence from suppression hearing in death penalty case would threaten the functioning of criminal process and the defendant's fair trial right, refusing to overturn trial court decision to seal certain exhibits and motions).

Here, with respect to Mr. Black's motion, he seeks to restrict from public view essentially every meaningful document in this matter. This is an affront to the public right of access to judicial proceedings and judicial documents. "The public's access to information is paramount to our justice system, as it encourages the public's confidence in the decision-making of judiciary—and this court takes its role in ensuring such public access seriously." *Ledezma v. Young Life*, No. 20-cv-01896-NYW, 2021 WL 2823261, at *10 (D. Colo. Jan. 8, 2021).

An arbitration agreement is a matter of contract between two private parties. They are free to agree to decide their disputes in private. But private arbitration always carries with it the possibility of a need for court intervention or participation. One party might need to be compelled to arbitrate. With an arbitration decision rendered, one side might challenge the arbitration award and refuse to pay, requiring the prevailing party to seek court relief to enforce the arbitration award. Or, as in this instance, one party might be required to seek assistance from a court to obtain evidence from a third party who never signed any arbitration agreement at all. Indeed, the FAA makes clear that the

10

power of the federal court may be invoked to procure evidence or witnesses before an arbitration panel. *See* 9 U.S.C. § (authorizing United States district court to compel the attendance of a witness summoned to appear before an arbitration panel). With every American arbitration proceeding having the potential to spill over into federal court, parties to even a private confidential arbitration should know they risk having the existence of their dispute become public knowledge because of the strong presumption of public access to federal court proceedings.

Any request for court intervention or assistance in an arbitration proceeding necessarily calls upon the public resources of a judicial officer to examine and decide the question presented. This is the basic functioning of the judicial process that the public has a right to see, understand, and criticize if they choose. Federal judges and their court staff are not legal pawns to be deployed in secret by wealthy disputants trying to get private answers to their problems. "Courts are public institutions which exist for the public to serve the public interest. Even a superficial recognition of our judicial history compels one to recognize that secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (internal citation omitted), *aff'd*, 139 F.3d 798 (10th Cir. 1998).

In arguing in favor of restricting essentially every meaningful document in this case, Mr. Black claims that restriction is necessary to protect "prior orders of the arbitral panel and the privacy interests of nonparties to this proceeding." Mr. Black makes no persuasive effort to explain why restriction of only certain exhibits or portions of documents would not be sufficient to protect these interests. It is not enough to say that the Panel has ordered everything in the arbitration to be confidential, so *any* disclosure

11

of *any* document from the arbitration conflicts with that order. In sum, Mr. Black's skeletal explanation fails to convince that these asserted interests "heavily outweigh" the public interests in access. His motion will be denied.

### III. RESPONDENT RICHARD EMERSON'S RENEWED MOTION TO RESTRICT

As opposed to Mr. Black, Mr. Emerson proposes a more moderate restriction of material from public view. Under Mr. Emerson's proposal, to be restricted in whole or in part would be seven of the exhibits to the Response, ECF Nos. 11-2, 11-4, 11-6, 11-7, 11-8, 11-9, 11-10, and two exhibits his Surreply, ECF Nos. 16-2, 16-3. For Exhibits 11-4-,11-6, and 11-7, Mr. Emerson seeks limited redactions. These are correspondences between counsel regarding Mr. Emerson's subpoena, with the redactions to be applied only to hyperlinks used to transmit discovery materials and personal information related to Mr. Emerson.

Under this proposal, Mr. Black's Petition, Mr. Emerson's Response, Black's Reply, and Emerson's Surreply, all would be open to the public for inspection. *See* ECF No. 22 at 6 n.4. The public would therefore understand the reason for Court's power is being invoked and the key issue to be decided: whether Mr. Emerson's is obliged to comply with an arbitral subpoena, or instead whether he has already complied.

Mr. Emerson asserts that, as a non-party, he has a significant privacy interest and asks the Court to restrict the listed exhibits on that basis. Certain of the exhibits he asks to be restricted because they are "confidential submissions to the arbitration Panel and that contain references to other non-parties to the Arbitration or that include content that is not relevant to the issues before the Court in this Petition." ECF No. 22 at 3. Mr. Emerson also cites the existence of the Panel's order restricting disclosure of

12

confidential information and the FAA's "strong policy protecting the confidentiality of arbitral proceedings" as basis for the limited restrictions that he urges.

The Arbitration's confidentiality order applies to "(i) discovery requests and responses; (ii) information disclosed about the subject matter of the dispute; and (iii) all documents and filings produced, given, or exchanged in connection with the Arbitration." ECF No. 2 at 2. Taken as written, this order means that every document produced or filed in connection with the arbitration should be deemed confidential. While that broad order may well apply to the Parties, it does not have to accepted as gospel by this Court.

That said, it is important to recognize that, in the context of federal litigation, there is less public interest in access to material that is being procured in discovery, as opposed to what is being submitted to a court for the purpose of judicial decision-making. For example, in *Seattle-Times v Rhinehart*, 467 U.S. 20 (1984), the Supreme Court affirmed a protective order which instructed the parties to maintain as confidential information learned in pretrial discovery, finding that there was no First Amendment right of access to discovery material and a court could, consistent with the Frist Amendment, protect discovery information from dissemination beyond the lawsuit. In that case, the Seattle-Times newspaper had been sued for defamation and invasion of privacy by the spiritual leader of a religious group, the Aquarian Foundation, about which the paper had been running a series of articles. The Seattle-Times immediately sought discovery, including financial information and the identities of donors to the foundation. The trial court issued an order compelling production, but did so under a protective order which restricted the newspaper's ability to publish the discovery

13

information that pertained to "the financial affairs of the various plaintiffs, the names and addresses of Aquarian Foundation members, contributors, or clients, and the names and addresses of those who have been contributors, clients, or donors to any of the various plaintiffs." 467 U.S. at 27. The Seattle-Times challenged the protective order as violating the First Amendment, but the Supreme Court affirmed, noting that "petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes" which are "a matter of legislative grace" and further noted that a "litigant has no First Amendment right of access to information made available only for purposes of trying his suit." 467 U.S. at 32.

The *Seattle-Times* opinion also explained that the rules of discovery, which authorize the issuance of a protective order, further a substantial government interest unrelated to the suppression of information: enabling parties to obtain information that they believe will be helpful in the preparation and trial of the case.

> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.

*Id.* at 34. The lesson from *Seattle-Times* is that discovery material is not presumptively available for public inspection. A lesser showing is required to restrict such material, even if it is submitted to the court and the material does not go to the heart of the court's decision-making process. This is consistent with the practice of protecting the confidential discovery information of nonparties by limiting the use and disclosure of the information to the lawsuit in which it is produced. *See, e.g.*, *Eagle Springs Organic LLC*

14

*v. Aes Clean Energy Dev.*, LLC, No. 24-cv-02770-DD-KAS, 2025 WL 1220366, at *2 (D. Colo. Apr. 15, 2025) (restricting access to third party confidential contract produced in discovery and noting, "courts have recognized that the public interest in access to judicial records is greatly diminished when the substance of the information is not relevant to the court's ability to resolve the issues before it"); *Sports Rehab Consulting LLC v. Vail Clinic, Inc.*, No. 1:19-cv-02075-WJM-SBP, 2024 WL 2864169, at *3 (D. Colo. May 9, 2024) (granting motion to restrict exhibits of an agreement, where "the contents of that agreement appear[ed] to be entirely irrelevant to the issues raised" by the motion before the court).

I have reviewed the documents proposed to be restricted or redacted under Mr. Emerson's proposal. I conclude that the public has less interest in having access to these exhibits compared to the Petition, Response, Reply, and Surreply. I also find that there are legitimate third-party privacy interests at stake here. In addition, by proposing only limited restrictions of exhibits and redactions, Mr. Emerson has complied with the directive of D.C. COLO.LCivR 7.2 (c)(4), which instructs a party to consider alternatives to complete restriction, including "redaction" or "restricted access to exhibits."

## IV.   CONCLUSION

Mr. Black's original Motion to Seal the Proceeding, ECF No. 2, and Unopposed Motion to Restrict, ECF No. 21, are **DENIED**. Mr. Emerson's more limited Motion to Restrict Case, ECF No. 22, is **GRANTED**.

Once this Order becomes effective, the Clerk is **ORDERED** to unrestrict all filings in this case, **except for ECF Nos. 11-2, 11-4, 11-6, 11-7, 11-8, 11-9, 11-10, 16-2, and**

15

**16-3**, which shall remain under restriction Level 1 (access available to the Parties and the Court).

Within three business days from the date this Order becomes effective, Mr. Emerson shall file on the public docket redacted versions of the three exhibits he suggests can be made public with limited redactions: **ECF Nos. 11-4, 11-6, and 11-7**.

### V. STAY OF ORDER

This Order is **STAYED** for three business days for Mr. Black to decide whether to object to Judge Martinez. If, within those three days, Mr. Black files a notice of his intention to object to this Order, then the Order will remain stayed until Judge Martinez rules on any objection. If no notice (not the formal objection itself, just a notice of intent to object) is filed within the next three days, then the stay will expire by the terms of this Order, this Order shall become effective, and the restrictions on public access to the filings in this case shall be lifted as described above.

Date: June 9, 2025

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge