IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 25-cv-1035-WJM-NRN

LEON D. BLACK,

 Petitioner,

v.

RICHARD EMERSON,

 Respondent.

---

**ORDER DISMISSING PETITION FOR IMPROPER VENUE**

---

  This matter is before the Court on Petitioner Leon D. Black's Petition to Compel Compliance with Arbitral Subpoena ("Petition"). (ECF No. 1.) On June 16, 2025, the Court issued an Order to Show Cause why it should not dismiss the Petition for lack of subject-matter jurisdiction and/or improper venue ("Show Cause Order"). (ECF No. 26.) Black filed a response to the Show Cause Order (ECF No. 28), to which Respondent Richard Emerson filed a reply (ECF No. 29).

  For the reasons stated below, the Petition is dismissed without prejudice.

## I. BACKGROUND[1]

  This subpoena enforcement action arises from arbitral proceedings currently pending before JAMS in New York County, New York, in which Black is plaintiff. (ECF

---

[1] This Background is derived from the Petition and the parties' substantive briefing related thereto, as well as from the parties' briefs on the Show Cause Order. (ECF Nos. 1, 11, 15, 28, 29.) All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

No. 1 at ¶ 2.)  *See Leon Black v. Joshua Harris,* JAMS Ref. No. 5425000715.  In 2021, Black resigned from his position as the Chief Executive Officer ("CEO") of Apollo Global Management ("Apollo"), a private equity firm that Black co-founded alongside Joshua Harris.  (ECF No. 1 at ¶ 11; ECF No. 11 at 5.)  In the arbitration, Black alleges that Harris disseminated disparaging information in a campaign to oust him as CEO.  (*Id.* at ¶ 11.)

According to Black, certain of these disparaging conversations took place between Harris and Emerson, the latter of whom was appointed to Apollo's board on the same day that Black resigned.  (*Id.* at ¶ 12; ECF No. 11 at 6.)  Black successfully petitioned the arbitral panel to issue a third-party subpoena to Emerson, among others, pursuant to the panel's authority under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7 ("Section 7").  (ECF No. 1 at ¶¶ 3, 13–16.)  As shown in the subpoena, two of the arbitrators' signature blocks list a business address at JAMS's offices in New York, and the third lists a business address at JAMS's offices in Philadelphia.  (ECF No. 1-1 at 4.)

Black addressed the subpoena to Emerson's residence in Boulder, Colorado, although it commanded Emerson to produce documents at the offices of Black's counsel at Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. in Washington, D.C.  (ECF No. 1-1 at 2; ECF No. 1 at ¶ 8.)  The subpoena further instructed that

> Alternatively, you may elect to bring the materials identified in Schedule A with you to a hearing before one or more of the undersigned arbitrators to be held on March 13, 2025, at a time and location to be determined by the Arbitration Panel.
>
> . . .
>
> If you refuse or neglect to obey this SUBPOENA, the United States District Court for the District of Colorado or a court of the State of Colorado of competent jurisdiction, upon

2

> petition, may compel your attendance, or punish you for contempt in the same manner provided by law in the courts of the United States.

(ECF No. 1-1 at 2.) It appears undisputed that one of the arbitrators had intended to convene a hearing in Denver, Colorado to collect evidence from Emerson. (ECF No. 1 at ¶ 28; ECF No. 11 at 8.) However, after Emerson's counsel accepted service of the subpoena on his behalf in February 2025, Emerson agreed to produce documents electronically and forgo an in-person hearing. (ECF No. 1 at ¶ 18; ECF No. 11-2.)

Emerson's initial written responses and objections to the subpoena are not in the record, but Black represents that Emerson initially objected to all four document requests propounded by Black, which largely sought documents and communications between Emerson and Harris or otherwise about Black. (ECF No. 1 at ¶¶ 4, 19; ECF No. 11-3; ECF No. 1-1 at 11–12.) After at least one meet and confer and additional written back-and-forth, Emerson produced 28 pages of e-mails on March 13, 2025. (ECF No. 1 at ¶ 24; ECF Nos. 11-3, 11-4.) Black filed the Petition on March 31, 2025, asserting that "Emerson has given . . . no indication that he intends to produce any additional documents beyond his deficient production on March 13, 2025" and asking the Court to "order Emerson to comply with the Subpoena in full and without withholding any responsive documents at the direction of Harris's counsel." (ECF No. 1 at ¶¶ 6, 24.)

Since the Petition was filed, the Court understands that Emerson has given deposition testimony at a hearing presided over by the panel on April 11, 2025 in New York. (ECF No. 11-3 (agreeing to testify in New York rather than Denver).) Shortly before the hearing, on April 8, 2025, Emerson produced an additional 86 pages of documents. (ECF No. 11-7.) And after the hearing, on May 6, 2025 Emerson produced a further 18 pages of documents, consisting of text messages. (ECF No. 16-1.)

3

Notwithstanding these additional productions, Black appears to still assert that Emerson has not fully complied with the subpoena.  (*See* ECF No. 15 (May 7 reply); ECF No. 28 (June 23 response to Show Cause Order).)  The Court also takes note that, at least as of the parties' initial substantive briefing on the Petition, the final liability hearings were to begin on July 28, 2025 under the then-current Case Management and Scheduling Order for the arbitration.  (ECF No. 11-5 at ¶ 45.)  As Black has not sought to dismiss the Petition or otherwise advised that this discovery dispute has been rendered moot, the Court will presume he was successful in his request to continue the liability hearings and that this discovery dispute remains active.  (ECF No. 11-8.)

## II. ANALYSIS

Per its Show Cause Order, the Court must now resolve whether it has subject-matter jurisdiction over the Petition and/or whether the Petition is properly brought in this venue.  Ultimately, it concludes that, even if diversity jurisdiction exists, Black has filed the Petition in the wrong venue.

As to subject-matter jurisdiction, the Court reiterates that the FAA does not separately confer federal question jurisdiction, and an independent basis for its subject matter jurisdiction must exist.  *See Hall Street Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 581–82 (2008) ("As for jurisdiction over controversies touching arbitration, the Act does nothing, being 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 26 n.32 (1983)); *Comanche Indian Tribe v. 49, L.L.C.,* 391 F.3d 1129, 1131 n.4 (10th Cir. 2004) ("The FAA alone cannot confer subject matter jurisdiction on the federal courts

4

without an independent jurisdictional basis.").

Here, Black alleges that the Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states (New York and Colorado) and the amount in controversy exceeds $75,000.  (ECF No. 1 at ¶ 9.)  The Court questioned in the Show Cause Order whether the latter requirement was satisfied because (1) "[i]n disputes arising under Section 7, federal courts have differed as to whether it is proper to 'look through' to the underlying arbitration to determine whether the amount-in-controversy requisite is satisfied;" and (2) irrespective of the applicable standard, "the Petition lacks any factual allegations plausibly supporting Black's wholly conclusory claim that more than $75,000 is in dispute, whether measured in terms of what is monetarily at stake in the subpoena enforcement dispute alone, or in the underlying civil action."  (ECF No. 26 at 2.)

As to the former issue, the Court is persuaded that the Supreme Court would interpret Section 7 consistent with its interpretation of Sections 9 and 10 in *Badgerow v. Walters,* 596 U.S. 1 (2022).  That is, district courts "may look only to the application actually submitted to it in assessing its jurisdiction." *Compare id.* at 5, *with Vaden v. Discover Bank,* 556 U.S. 49, 62 (2009) (concluding, based on Section 4's instruction that a district court may hear a petition to compel arbitration if, "save for [the arbitration] agreement," the court would have jurisdiction over "a suit arising out of the controversy between the parties" that "a federal court should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy").

Still, Black is correct that the standard for dismissal based on failure to satisfy the amount-in-controversy is high.  "Only if it is 'legally certain' that the recovery or cost of

5

complying with judgment will be 'less than the jurisdictional floor may the case be dismissed.'" *Phelps Oil & Gas, LLC v. Noble Energy Inc.,* 5 F.4th 1122, 1126 (10th Cir. 2021) (quoting *McPhail v. Deere & Co.,* 529 F.3d 947, 955 (10th Cir. 2008)). Thus, while the Court has its doubts, for the purposes of this Order it will assume, without deciding, that Black has satisfied the amount-in-controversy requirement by alleging that there is some quantity of unproduced responsive documents in Emerson's possession with a value of at least $75,000 to Black in proving up his claims in the underlying arbitration. *See, e.g., Washington Nat'l Ins. Co. v. OBEX Group LLC,* 958 F.3d 126, 135 (2d Cir. 2020) (finding amount-in-controversy requirement satisfied in subpoena enforcement action filed pursuant to Section 7 where the movant "claim[ed] only that the value of the documents 'exceeds the sum or value of $75,000'").

Even so, the District of Colorado is not the proper venue for this subpoena enforcement action. Section 7 provides in pertinent part that

> if any person or persons so summoned [by the arbitrator(s)] to testify shall refuse or neglect to obey said summons, upon petition *the United States district court for the district in which such arbitrators, or a majority of them, are sitting* may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7 (emphasis added). Here, the situs of the arbitration is New York, at least two of the three arbitrators are sitting in New York, and the third is sitting—if not in New York—in Philadelphia. (*See* ECF No. 1-1 at 4.)

Nevertheless, Black maintains that venue is appropriate in the District of Colorado because Section 7 of the FAA is not a mandatory venue provision and, even if

6

it were, it does not limit venue over subpoena enforcement proceedings to the location of the *final* hearing. (ECF No. 28 at 7, 11–13.) Rather, Black argues, it is sufficient that the panel had *intended* to convene a special hearing in this District to receive Emerson's documents. (*Id.* at 11–13.)

The case law is overwhelmingly against Black on these arguments. As a threshold issue, there is nothing on the face of the subpoena that compels Emerson's compliance in the District of Colorado. (*See generally* ECF No. 1-1.) Still, even acknowledging that the parties appear to be in agreement that they originally intended to convene a limited hearing in Denver, the vast majority of federal courts to have considered precisely the issue before this Court have concluded that they lacked authority to enforce arbitral summons that compelled compliance at a one-time hearing within their district, when the seat of the arbitration was located elsewhere. Moreover, all or a substantial portion of these decisions post-date *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,* 529 U.S. 193 (2000), upon which Black relies in arguing that Section 7 merely prescribes a permissive venue. *See, e.g., Campaign Registry, Inc. v. Tarone,* 2024 WL 3105524, at *1, 7 (S.D.N.Y. June 24, 2024) (concluding it lacked authority to enforce arbitral subpoenas commanding production at a hearing in New York, where the seat of the arbitration was Delaware); *Depuy v. Synthes Sales, Inc. v. Smith + Nephew, Inc.,* 2022 WL 79812, at *3 (S.D. Ohio Jan. 7, 2022) (concluding the Southern District of Ohio was not the proper venue for enforcement where the arbitral subpoena commanded compliance in Cincinnati but the arbitrator was sitting in Indianapolis); *Day v. Orrick, Herrington & Sutcliffe LLP,* 2021 WL 4069753, at *1 (N.D. Cal. Sept. 7, 2021) (same where subpoenas ordered compliance at a hearing in San

Jose, California, but it was undisputed that Washington, D.C. was the seat of the underlying arbitration), *rev'd and remanded on other grounds* 42 F.4th 1131, n.4 (9th Cir. 2022).

The Court similarly concludes here that it lacks authority to enforce the subpoena to Emerson because this is not "the United States district court for the district in which such arbitrators, or a majority of them, are sitting." 9 U.S.C. § 7.

### III. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Petition (ECF No. 1) is DISMISSED WITHOUT PREJUDICE to re-filing in the appropriate venue;

2. Each party shall bear their own court costs; and

3. The Clerk of Court is DIRECTED to TERMINATE this action.

Dated this 18th day of August, 2025.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge